IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**JOHN DOE**     **PLAINTIFF**

**V.**     **CIVIL ACTION NO. 2:18-CV-153-KS-MTP**

**THE UNIVERSITY OF SOUTHERN
MISSISSIPPI,** *et al.*     **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This cause came before the Court on the Plaintiff John Doe's Emergency Motion for Temporary Restraining Order and Injunctive Relief [5].[1] Defendants responded [21] and an evidentiary hearing was held on September 10, 2018. Having reviewed the parties filings, reviewed the evidence submitted at the hearing and heard argument of counsel, and otherwise being fully advised in the premises, the Court finds that the motion will be **granted in part** and **denied in part**.

The Court begins by noting, "The purpose of a preliminary injunction is to preserve the status quo and thus prevent irreparable harm until the respective rights of the parties can be ascertained during a trial on the merits." *Exhibitors Poster Exch., Inc. v. Nat'l Screen Svc. Corp.*, 441 F.2d 560, 561 (5th Cir. 1971). In his motion, Plaintiff seeks not only prohibitory injunctive relief, but also, more importantly, mandatory injunctive relief, which requires the University to take action. *See Meghrig v. KFC W., Inc.* 516 U.S. 479, 484 (1996) (explaining that a prohibitory injunction "restrains" a party from acting whereas a mandatory injunction requires a party to "take action"). Only in rare instances is the issuance of this type of injunction proper, and a

---

[1] This Court previously denied the motion in so far as it sought a Temporary Restraining Order. [14]. The Court now considers the request for a preliminary injunction.

mandatory injunction at the early stages of the proceedings simply "should not be issued unless the facts and law clearly favor the moving party." *Pham v. Univ. of La. at Monroe*, 194 F. Supp. 3d 534, 543 (W.D. La. 2016); *Harris v. Wilters*, 596 F.2d 678, 680 (5th Cir. 1979) (citing *Exhibitors*, 441 F.2d at 561). Whether or not an injunction shall issue is within the sound discretion of the trial court. *Exhibitors*, 441 F.2d at 561. In its discretion, based on the totality of the circumstances of this case, the Court finds this is one of those rare instances. Pursuant to Federal Rules of Civil Procedure 65 and 52(a)(2), the Court finds as follows:

## I. FINDINGS OF FACT

In May 2018 Jane Roe reported to Lt. Donald Parhm with the University of Southern Mississippi Police Department an alleged sexual assault that took place sometime during the early part (February) of the Spring Semester 2016. (Def. Ex. 1; USM0000125). Roe, at the urging of a counselor at the Shafer Center, later reported the incident to Dr. Rebecca Malley, the University's Title IX coordinator and filed a complaint. (*Id.*; USM000080) Roe then signed a statement, and Dr. Malley sent that statement to Plaintiff on June 25, 2018, along with a copy of the University's Sexual Misconduct Policy and Procedures. (*Id.*) The process continued, and Dr. Malley met with Plaintiff on June 26, 2018 and explained the investigation and hearing process to him. (Pl. Ex. 6-A) That same day, Dr. Malley sent a letter, advising Plaintiff who the panelists on the Sexual Misconduct Investigative Team (SMIT) would be, as well as who his process advisor was. (*Id.*) The SMIT would conduct the interviews, review the evidence and render the decision. Plaintiff testified that Dr. Malley told him he could have no contact with Jane Roe or any of the witnesses throughout the process.

On July 8, 2018, Plaintiff sent Dr. Malley his statement. (Pl. Ex. 4) The next day he sent her the names and phone numbers of two witnesses that he wanted interviewed. (Def. Ex. 3). He

testified there were no witnesses that he wanted to call that were not. The "formal investigative hearing" was held on July 18 and 20, 2018, which consisted of interviews by the SMIT either in person or by phone of Jane Doe (who was interviewed twice, once on each of the days), Plaintiff, and six witnesses. (Pl. Ex. 10; USM0000152-165). In the hearing before the Court, Dr. Sayre testified that the only people present in the room were the three panel members and a graduate assistant who took notes.[2] Plaintiff was not allowed to be present during any of the interviews, nor was he allowed to submit any questions to be asked of any of the witnesses, as the procedures for the hearing do not allow for the parties to do so. (Def. Ex. 1; USM000099-124). On July 27, 2018, Dr. Malley sent Plaintiff a summary of all of the interviews and stated in her letter, "If you see any changes/corrections/additions you want to make, send those to me in an email no later than 5 p.m. on August 3 (next Friday)." (Pl. Ex. 10; USM0000151). The SMIT conducted the interviews, evaluated the evidence, deliberated and then rendered its decision.

On August 10, 2018, the University's Title IX Office advised Plaintiff that the SMIT had determined that Plaintiff violated the University's Sexual Misconduct Policy, that disciplinary sanctions would be issued, and that Plaintiff would be informed of the sanctions no later than August 24, 2018. (Pl. Ex. 13). In a letter dated August 21, 2018, the Vice President of Student Affairs notified Plaintiff that a sanction of a one-year suspension was being imposed. (Pl. Ex. 14). On August 28, 2018, through an attorney, Plaintiff filed an appeal with the Title IX Coordinator. (Def. Ex. 11). On September 7, 2018, Dr. Malley informed Plaintiff that the appeals officer would be issuing a decision by the end of the day on September 20, 2018. (Def. Ex. 12)

At the hearing, Plaintiff testified as to his version of what happened on the night in question. He also testified that when he got a summary of the testimony, he did not respond to it

---

[2] The assistant was not present for Plaintiff's interview because she tutored him in the past and felt it prudent to recuse herself.

because he thought the panel would see the inconsistencies, he told the truth, and he gave them all he had. Plaintiff further testified at the hearing that he needed six hours to graduate; that he is currently enrolled in his final two classes; and he has participated in some online activity in those classes.  He further testified that he attends school on an athletic scholarship, which requires taking classes and participating in football. If his suspension continues, he will lose his scholarship.  He is the youngest of eighteen (18) children and without his scholarship, he cannot afford to attend school and will be unable to graduate. He believes if he tried to go to another school all of his credit hours would not transfer and without the ability to attend USM that his goal of getting his degree would be unachievable.

## II. <u>CONCLUSIONS OF LAW</u>

Plaintiff put forth three arguments for entitlement to an injunction—his Title IX claim under an erroneous outcome theory based on gender discrimination and his Section 1983 claims for substantive and procedural due process violations. Because the Court finds that Plaintiff has carried his instant burden only as to the procedural due process violation, it will not address the other claims at this time.

### A.     **Standard for Preliminary Injunction.**

It has long been the law that to be entitled to injunctive relief, a party must show "(1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that irreparable injury will result if the injunction is not granted, (3) the threatened injury if the injunction is denied outweighs any harm that will result if injunction is granted, and (4) the granting of the injunction will not disserve the public interest. *PCI Transp., Inc. v. Fort Worth, W.R.R. Co.*, 418 F. 3d 535, 545 (5th Cir. 2001) (citation and quotations omitted).  A preliminary injunction is an extraordinary remedy and should not be granted unless the party prevails on all

four elements. *Planned Parenthood Ass'n of Hidalgo Cty. Tex,, Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012).

### B. Analysis of the Factors.

#### 1. A substantial likelihood of success on the merits.

When looking at alleged violations of procedural due process, the first question to be asked is "under the circumstances of the case, how much procedure is due?" Defendants argue that in a school disciplinary proceeding, a respondent only has to be afforded notice and the opportunity to be heard. Defendants rely on *Esfeller v. O'Keefe*, 391 Fed. Appx 337 (5th Cir. 2010) for that proposition. However, the Court finds *Esfeller* inapplicable. First, it is an unpublished case decided after January 1, 1996, and thus, is not Fifth Circuit precedent. *See* 5th Cir. R. 47.5.4. Second, the case does not involve sexual assault but rather harassment of another student so the issues are a bit different. And third, to the extent the opinion relied on *Goss v. Lopez*, a Supreme Court case from 1975, *Goss* involved a several day suspension of high school students for disruptive and disobedient conduct, which is a far cry from a case involving a sexual assault and significant consequences where credibility is key.[3]

Plaintiff argues, on the other hand, that in this he said/she said scenario, involving accusations of sexual misconduct where credibility is the central issue, more is required and that Plaintiff was entitled to confront the witnesses against him by cross examination and also to ask follow-up questions. The Court has considered the notes from the SMIT investigative interviews and the testimony of Dr. Sayre, and contradictions abound.

---

[3] In its Supplemental Response dated 9/13/18, Defendants distinguish *Baum* and, in addition to continuing to rely on *Esfeller*, also cite to *Dixon v. Alabama State Bd. of Education*. *Dixon* is a 1961 case wherein black students participating in demonstrations were expelled from school without any explanation. 294 F.2d at 152-153. The fact that some sort of hearing was required is now considered axiomatic. While this Court occasionally cites to *Dixon* for general propositions regarding due process and has in this very Order, the Court does not find it to be the definitive law in a case 57 years later involving quasi-criminal misconduct involving sexual assault.

5

Plaintiff relies on the recently issued Sixth Circuit case of *Doe v. Baum*, ___ F.3d ___, 2018 WL 4265634, No. 2:16-cv-13174, (6th Cir. Sept. 7, 2018) and the dissent in Fifth Circuit case of *Plummer v. University of Houston*, 860 F.3d 767 (5th Cir. 2017). The court in *Baum*, although deciding a Motion to Dismiss, does an excellent job of explaining the unique aspects of this type of case where credibility is at issue and the consequences are grave if a party is found "responsible." Also, while the majority of the Fifth Circuit panel in *Plummer* admonishes that "[a] university is not a court of law, and it is neither practical nor desirable it be one," the court goes on to state that "[t]he nature of the hearing should vary depending upon the circumstances of the particular case." 860 F.3d at 773 (citing *Dixon*, 294 F.2d at 158).  So as the court stated in *Baum*, "when it comes to due process, the 'opportunity to be heard' is the constitutional minimum . . . [b]ut determining what being "heard" looks like in each particular case is a harder question." 2018 WL 426534 at *3. The Court finds under the unique circumstances of this case that the Plaintiff is likely to prevail on the merits of his procedural due process claim.

The specific dictates of due process generally require consideration of three distinct factors, known as the *Mathews* factors:  (a) the nature of the private interest subject to official action; (b) the risk of erroneous deprivation under the current procedures used, and the value of any additional or substitute procedural safeguards; and (c) the University's interest, including the burden any additional or substitute procedures might entail. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *Plummer*, 860 F.3d at 773.  At times only the minimum protection is required, but when longer suspensions or expulsions are at issue, more formal procedures may be required. *Goss*, 419 U.S. at 584. Again, "[t]he nature of the hearing should vary depending on the circumstances of the particular case." *Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150, 158 (5th Cir. 1961).

Reviewing this case under the *Mathews* factors, the Court finds, as the court did in *Plummer*, the first and third factors are easily identified. *See Plummer*, 860 F.3d at 773 Plaintiff has a liberty interest in his higher education and the sanctions imposed could have a "substantial lasting impact on appellants' personal lives." *Id.* (citing to *Dixon*, 294 F.2d at 157 and *Doe v. Cummins*, 662 Fed. Appx. 437, 446 (6th Cir. 2016)(unpublished));  Plaintiff also has a liberty interest in his reputation. *See Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971) ("Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential").

"On the other hand, the University has a strong interest in the 'educational process,' including maintaining a safe learning environment for all its students, while preserving its limited administrative resources." *Plummer,* 860 F.3d at 773 (citing *Goss*, 419 U.S. at 580, 583 and *Gorman v. Univ. of Rhode Island*, 827 F.2d 7, 14-15 (1st Cir. 1988)).  However, allowing one accused of sexual misconduct to be present to hear the testimony and ask his/her questions either live or through written submission would not cost the University anything as far as resources are concerned.

With regard to the second factor, the risk of erroneously depriving Plaintiff's interests under the procedures used, and the value of additional or substitute procedural safeguards, the Court finds the procedures under the facts of this case inadequate.  The value of the additional safeguards is immense in a he said/she said situation.  When credibility is at issue, it is crucial to be able to attempt to draw out the truth and should be required in circumstances like these "because it is 'the greatest legal engine ever invented' for uncovering the truth." *Baum*, 2018 WL 426534 at *3 (citing *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399-402 (6th Cir. 2017)).

Although cross examination is required in the Sixth Circuit,[4] it has not yet been the pronouncement of the Fifth Circuit. That having been said, the right set of circumstances has not yet been before the Fifth Circuit. The Court finds that this is such a case where the Fifth Circuit is likely to follow the lead of its sister circuit.

In *Plummer*, a case involving sexual assault, the court certainly hinted that under the right set of facts, it could find that cross examination is warranted, but the facts of *Plummer* did not lend themselves to such a holding.[5] *See* 860 F.3d 774, 775. Because there were graphic videos depicting the incidents, the court found that further procedural safeguards would not have lessened the risk of erroneous deprivation of the respondents' interests or altered the outcome. *Id*. at 774.[6] Further, the adjudication did not rely on the testimony of the female student who was assaulted—she remembered very little; it was the videos and photographs. *Id*.[7] Thus, while the Fifth Circuit has not held that cross examination is required, it has certainly never held that it is strictly prohibited. This Court finds that this is a case where cross examination is warranted because such a procedural safeguard would have lessened the risk of an erroneous deprivation.

Here, the panel accepted Jane Roe's version of events despite the fact that more than one witness questioned her truthfulness and Lt. Parhm, the only highly trained investigator, flatly said he did not find her credible. She had more than one reported incident involving the University police. Plaintiff, on the other hand, had never been in trouble, and a female witness, who had known him for a while, told the panel, this [alleged sexual assault] was out of character for him.

---

[4] The court in *Baum* notes that it was in *Flaim v. Medical College of Ohio*, 418 F.3d 629, 641 (6th Cir. 2005), that the Sixth Circuit first suggested that cross-examination maybe required in a school disciplinary proceeding where credibility was the key question and made it the law of the circuit in *Doe v. Cincinnati*. ___ at 2.

[5] "[T]he unique facts of this case render it unnecessary that we draw any determinative line regarding sufficient procedures in statue university disciplinary cases." *Plummer*, 860 F.3d 774. "This case does not require that we determine whether confrontation and cross-examination would ever be constitutionally required in student disciplinary proceedings." *Id*. at 775.

[6] Judge Jones, in her dissent, strongly felt otherwise. *Plummer*, 860 F.3d at 778-784.

[7] Here, the panel's notes reflect that their decision "may turn on the veracity of the Ws." (Pl. Ex. 1; USM 000310).

(Pl. Ex. 1, USM 000329). The panel failed to flesh out inconsistencies in her story when she was questioned,[8] which Plaintiff could have done if allowed to hear the testimony live.

It is true that Plaintiff was provided an opportunity to make changes, additions, or corrections, to the summaries of the testimony, but that just creates more he said/she said. He could not know whether the summary was correct because he never heard the testimony in the first place. Writing a rebuttal after the testimony is complete is not the same as cross examination, which provides the opportunity to assess the person's demeanor when asked certain questions and flesh out inconsistencies in a search for the truth. This is particularly true in this case where one of the main points of undermining Plaintiff's credibility was the panel's conclusion that Plaintiff knew about the allegation of sexual assault back in 2016 based on the testimony of ▇▇▇▇▇. (Pl. Ex. 13, USM 000194). There are three sets of what appear to be contemporaneous notes by the panel members and not one notes that ▇▇▇▇▇ told Plaintiff about the assault in October 2016 (Pl. Ex. 1, USM 000294-295; USM 000299; USM 000329). Only a *summary* in the notes provides for such a fact. (USM 000300).

What does seem clear from the notes is that Ms. ▇▇▇ noticed a change in Jane Roe in Spring semester 2018 and also saw an Instagram post of Jane Doe during the same semester that indicated depression; Ms. ▇▇▇ asked Ms. ▇▇▇ about it; and Ms. ▇▇▇ told Ms. ▇▇▇ at that time about the alleged assault that occurred back in 2016. Why would she have claimed to

---

[8] For example, Jane Roe first told Officer Parham that she knew Plaintiff for about two weeks before they started texting the day of the incident and that she met him at outside of the Thad Center. However, she told the panel that when she met Plaintiff outside of the Thad Center, it was the day of the incident. Also, in the summary of the testimony, Dr. Sayre asked Jane Roe if she told her roommate and then others over time, and Roe said yes, her roommate and then she told ▇▇▇▇▇ and ▇▇▇▇▇. (Pl. Ex. 2, USM 000219; Pl. Ex. 1, USM 00315). ▇▇▇▇▇ told the panel that Roe never told him about the alleged assault. (Pl. Ex. 1 USM 000293, USM 00320; Pl. Ex. 2 USM 000227), and ▇▇▇▇▇ never stated that Roe told her, and she apparently was not asked. Roe never told the panel she told ▇▇▇▇▇, but ▇▇▇ told the panel that Jane Roe told her about it a couple of days after the incident. (Pl. Ex. 2 at 2; USM 000219, 000225). Moreover, although Roe told others about the assault, the panel did not ask any specifics about the details Roe gave others because, as Dr. Sayre testified, the panel did not see it as important whether the details she told others corroborated the details she told the panel.

learn about it from Ms. ▮▮▮▮ if she knew about it October 2016? It appears no one followed up to clarify, or at least there are no notes in that regard. Ms. ▮▮▮▮ never stated that Jane Roe told her about the assault, as Jane Roe claimed. Yet, the panel concluded that Ms. ▮▮▮▮ told Plaintiff about the assault during a car ride in Fall 2016. (USM 000193).

These are but a few examples of the live testimony that could have been addressed and cleared up at the time, but these in particular went directly to the panel's assessment of credibility and could have affected the outcome of this case. Without a live proceeding with Plaintiff present, the risk of erroneous deprivation of Plaintiff's interest in his reputation, education, and employment is significant. Additional procedural safeguards such as hearing the testimony and either being able to ask questions or submit questions would both assist the truth-seeking process and help to ensure the protection of Plaintiff's constitutional rights. Because the Court finds that the *Mathews* factors weigh in Plaintiff's favor, the Court finds that there is a substantial likelihood on the success of the merits of Plaintiff's procedural due process claim.

### 2. A substantial threat that irreparable injury will result if the injunction is not granted.

With regard to the second factor Plaintiff must show, the evidence thus far reveals that Plaintiff is the youngest of eighteen children, all from the same mother. He is a senior, needing six (6) credit hours to graduate, and his only means of finishing school is his athletic scholarship. If he is not able to play football, he loses his scholarship and his ability to finish his degree and attempt to move on to the NFL in the spring.[9] The Court finds Plaintiff has carried his burden in this regard.

---

[9] *See also* Def. Ex. 10.

### 3. The threatened injury if injunction is denied outweighs the harm that will result if injunction is granted.

The ability for Plaintiff to continue in school and graduate is in jeopardy if the injunction is denied. Should the injunction be granted, what harm would result? Plaintiff has no record of any prior or subsequent disciplinary issues. While it is unclear whether Jane Roe is currently attending classes, the parties went to school together for two years between the time of the incident and its reporting without any further incidents or altercations. Officer Parham told the panel that the parties have had no contact as of July 2018 and that Jane Roe reported that Plaintiff did not pose a threat to her in any kind of way. (Pl. Ex. 2, USM 000222). Thus, Plaintiff's return to school would not result in harm to either Jane Roe or the University at large. As such, the Court finds the Plaintiff has carried his burden in this regard as well.

### 4. The granting of injunction will not disserve the public interest.

Finally, with regard to whether the injunction will disserve the public interest, protecting a person's constitutional right to due process is always in the public interest. *See Am. Civ. Liberties Union Fund of Mich. V. Livingston Cnty.*, 796 F.3d 636, 649 (6th Cir. 2015)("[W]hen a constitutional violation is likely . . . the public interest militates in favor of injunctive relief because it is always in the public interest to prevent violation of constitutional rights.").[10] Accordingly, the public interest is not only *not disserved* but also *served*. Thus, Plaintiff has carried his burden in this regard as well.

---

[10] Defendants argue that the showing must be that the injunction *serves* the public interest; however, the Fifth Circuit has clearly stated that in *Canal Authority of State of Florida v. Callaway,* 489 F.2d 567 (5th Cir.1974), the court had established the requirements that must be shown before a party is entitled to injunctive relief, and the fourth element is that the injunction "will not disserve the public interest." *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). Nevertheless, this Court finds the injunction will also serve the public interest.

## IV. CONCLUSION

On balance, the aforementioned factors favor an award of injunctive relief, and the Court finds a preliminary injunction is warranted. Despite the host of remedies Plaintiff requests, the scope of the injunction shall be quite limited. Thus, in so far as Plaintiff seeks relief beyond what is ordered below, the motion is **denied**. In addition, it appears of all the Defendants, President Bennett is the proper party to effectuate the injunctive relief ordered.[11] Accordingly, it is hereby ORDERED that President Bennett shall:

(1) immediately reinstate Plaintiff as a student in good standing at the University during the pendency of this matter; and

(2) allow Plaintiff to enter campus for the purpose of attending the courses at the University that he is presently enrolled in and all activities necessary to maintain his athletic scholarship, which may include, inter alia, training, practices, games, team meetings, and the like.

Finally, because the Court finds there would be no monetary damage to the University should this injunction be found to be wrongfully entered, in its discretion, the Court will not require Plaintiff to post any security pursuant to Federal Rule of Civil Procedure 65(c). *Kaepa, Inc. v. Achilles Corp.,* 76 F.3d 624, 628 (5th Cir. 1996).

SO ORDERED AND ADJUDGED this 13th day of September, 2018.

       /s/ Keith Starrett_____
      KEITH STARRETT
      UNITED STATES DISTRICT JUDGE

---

[11] *See Doe v. Univ. of Miss.*, No. 3:16-cv-63-DPJ-FKB, 2018 WL 3570229 at *3 (July 24, 2018) (addressing the *Ex Parte Young* exception and citing cases regarding which state official has authority to grant relief sought).