IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

JOHN DOE                                                                    PLAINTIFF

V.                                              CIVIL ACTION NO. 2:18-CV-153-KS-MTP

THE UNIVERSITY OF SOUTHERN MISSISSIPPI, ET AL.             DEFENDANTS

DEFENDANTS' BRIEF IN OPPOSITION TO
PLAINTIFF'S SECOND MOTION FOR PRELIMINARY INJUNCTION

Envisioning a set of circumstances that may or may not come to fruition and demanding a constitutional right never before recognized in the Fifth Circuit, Plaintiff John Doe requests a second preliminary injunction to enjoin the University of Southern Mississippi (the "University") from re-commencing his student disciplinary proceedings in a form suggested by this Court. Because the University's amended process complies with this Court's prior Order and provides adequate procedural due process, this Court should deny Doe's request for preliminary relief.

### FACTUAL AND PROCEDURAL BACKGROUND

Doe declines to recite any factual or procedural background in his Motion for Preliminary Injunction, asserting that "the Court is familiar with the facts and circumstances which forced Doe to bring this matter in the first place."[1] While the Court is indeed familiar with the facts leading up to and through Doe's first student disciplinary hearing (and the University adopts and incorporates the previous recitation regarding those facts), the factual circumstances giving rise to Doe's request for a second preliminary injunction are markedly different. Doe claims that the

---

[1] Pl.'s Brf. p. 1, n.1 [Doc. 41].

process "remains largely unchanged," [2] but he is mistaken.

After the Court granted its initial preliminary injunction, the parties conferred with the Court on a telephonic conference to discuss the status of the case and of Doe's underlying disciplinary action at the University.[3] During that call, the University expressed its belief that, if Jane Roe maintained a desire to proceed with her sexual misconduct complaint, it was required to re-commence its disciplinary process in a manner consistent with the Court's order, to which the Court agreed. The University subsequently contacted Roe to inform her of the Court's Order and determine if she intended to maintain her sexual misconduct complaint.

Roe informed the University she did desire to assert her complaint through a second disciplinary process, and counsel for the University conferred with Doe's counsel to discuss the form of those renewed proceedings.[4] Initially, the University proposed to allow both the complainant and respondent (along with their counsel and/or support person) to hear the panel's interviews through a conference phone, and to then allow the complainant and respondent to submit questions via email at the end of the panel's questions for a particular witness.[5] In response to the University's initially-proposed amendments, Doe's counsel expressed the following primary concerns: 1) that the respondent could not adequately evaluate a witness' demeanor if he or she was not in the room during questioning, 2) that there should be some sort of procedure for handling questions submitted but not actually asked by the panel, and 3) that the

---

[2] *Id*. at p. 2.
[3] *See* Minute Entry for Proceedings, Sept. 26, 2018.
[4] *See* Ex. "A" (Email from C. Mayo to D. Waide, Oct. 4, 2018).
[5] *Id*.

standard of evidence should be increased from a preponderance to clear and convincing standard if the complainant submits questions to the panel for the respondent.[6]

As a result of this Court's prior Order and these comments from opposing counsel, the University modified the process for Doe's second hearing in several fundamental ways. First, based on this Court's holding that Doe "could not know whether the summary [of witness testimony] was correct because he never heard the testimony in the first place,"[7] the amended process enables both the complainant and the respondent to observe the entirety of the interview proceedings.[8] Additionally, based on this Court's determination that submitting a rebuttal following the panel's summary of witness testimony was insufficient because it "is not the same as cross examination, which provides the opportunity to assess the person's demeanor when asked certain questions and flesh out inconsistencies in search for the truth,"[9] the amended process allows Doe to submit, in real-time as he is hearing witness testimony, questions he believes will ferret out inconsistencies in a witness's recollection or narrative.[10]

Because Doe expressed concern that all submitted questions might not be asked by the panel, the amended process also allows Doe to make a record regarding each of his requested questions and the reasons such questions should be asked. Furthermore, based on Doe's concern that he cannot adequately evaluate a witness' demeanor if cannot see the witness, he will be able

---

[6] *See* Ex. "B" (Email from D. Mauldin to D. Waide, Oct. 5, 2018).
[7] Order, p. 9 [Doc. 35].
[8] *See* Proces Ltr., p. 2 [Doc. 40-1].
[9] Order, p. 9 [Doc. 35].
[10] *See* Proces Ltr., p. 2 [Doc. 40-1].

to assess the witness's demeanor as those questions are asked and answered by virtue of a live video feed.[11] Finally, based on this Court's concern that Doe had an insufficient opportunity to flesh out potential inconsistencies during his rebuttal, both the complainant and the respondent will be allowed to access a recording of the proceeding to highlight any inconsistencies or issues they believe the panel should consider in reaching its determination.[12]

The University's modified process is, therefore, consistent with this Court's previous admonition that "[a]dditional procedural safeguards such as hearing the testimony and either being able to ask questions or submit questions would both assist the truth-seeking process and help to ensure the protection of Plaintiff's constitutional rights."[13] Under the amended process, Doe can observe the entirety of the hearing proceedings and submit in real-time questions for cross-examination, and both he and the panel can observe the witness's demeanor as those questions are asked and answered. Doe can access a recording of the proceedings to draw attention to specific issues while preparing his potential rebuttal following the hearing. The amended process provides adequate procedural due process in the context of a student disciplinary matter, while balancing the interests of the complainant and the University as well.

---

[11] *See id.*
[12] *See id.*
[13] Order, p. 10 [Doc. 35].

### DOE IS NOT ENTITLED TO A PRELIMINARY INJUNCTION

A preliminary injunction is an "extraordinary remedy never awarded as of right." *Winter v. Nat'l Res. Def. Council*, 555 U.S. 7, 24 (2008); *Atchafalaya Basinkeeper v. United States Dep't of State*, 894 F.3d 692, 696 (5th Cir. 2018). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id*. at 20. A preliminary injunction should only be granted if the movant has "clearly carried the burden of persuasion on all four prerequisites." *Thompson v. Attorney General of the State of Miss.*, 129 F. Supp. 3d 430, 433 (S.D. Miss. 2015) (quoting *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985)) (*cleaned up*).

### 1. Doe is unlikely to succeed on the merits because the University's modified process satisfies constitutional due process requirements.

As consistently held by the Fifth Circuit, "[i]t is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking in wisdom or compassion." *Plummer v. Univ. of Houston*, 860 F.3d 767, 772 (5th Cir. 2017) (quoting *Wood v. Strickland*, 420 U.S. 308, 326 (1975)). Instead, the Court's determination is limited to whether the school employed fundamentally fair procedures to determine whether misconduct occurred. *Id*. (quoting *Flaim v. Med. Coll. of Ohio*, 483 F.3d 629, 634 (6th Cir. 2005)). Here, the University will use fundamentally fair procedures to determine whether Doe violated the

University's student misconduct policy, and Doe's constitutional challenge fails.[14]

### a. *The University's process is sufficient under <u>Matthews</u>.*

Albeit an inherently flexible standard, the Fifth Circuit has held "due process requires notice and some opportunity for hearing before a student at a tax-supported college is expelled for misconduct." *Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150, 158 (5th Cir. 1961). In determining the amount of process due, the Court should consider the following, which are commonly referred to as the *Matthews* factors: a) the student's interest that will be affected, b) the risk of an erroneous deprivation of such interests through the procedures used and the probable value, if any, of additional safeguards, and c) the university's interests, including the burden that additional procedures would entail. Order p. 14 [Doc. 75] (quoting *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976)).

While Doe's motion takes aim at several discrete aspects of the University's amended process, the Court should not view specific elements of the University's disciplinary hearing process in isolation. Although case law provides "general guidelines as to what specific procedures should be employed in the university context," "the requisite elements of procedural due process are not wooden absolutes applicable to each case regardless of circumstances." *Pham v. Univ. of La. at Monroe*, 194 F. Supp. 3d 534, 544 (W.D. La. 2016) (quoting *U.S. v. Richardson Ind. Sch. Dist.*, 483 F. Supp. 80, 85 (N.D. Tex. 1979)). Indeed, "the interpretation

---

[14] While Doe's Amended Complaint references additional causes of action, he has not briefed any of those arguments for purposes of his Motion for Preliminary Injunction. Doe has likewise failed to brief any arguments regarding the University's use of the preponderance of the evidence standard in his motion papers.

and application of the Due Process Clause are intensely practical matters and . . . 'the very nature of due process **negates any concept of inflexible procedures universally applicable to every situation**.'" *Plummer v. Univ. of Houston*, 860 F.3d 767, 773 (5th Cir. 2016) (quoting *Goss v. Lopez*, 419 U.S. 565, 578, 95 S. Ct. 729 (1975)) (emphasis added). Thus, the nature of the hearing should vary depending based upon the application of the *Matthews* factors to the specific circumstances of the case. *See id*.

Again, in *Plummer*, a case that likewise turned on the second *Matthews* factor, the Fifth Circuit found constitutionally sufficient a student conduct process that afforded accused students less process than present here. *Plummer*, 860 F.3d at 778. In that case, the Title IX coordinator advocated for the complainant, investigated the alleged events, prosecuted the respondent, resolved fact disputes, issued a determination as to whether a conduct violation occurred, testified as a witness at appeal hearings, and trained and advised the appeal hearing panel. *Id*. at 780 (Jones, J. dissenting).

The Fifth Circuit found the University's due process obligations fulfilled because the respondent students "received multiple, meaningful opportunities to challenge the University's allegations, evidence, and findings." *Id*. at 774. The Title IX coordinator's dual roles did not amount to a constitutional violation because the respondent students failed to show how alleged impermissible conflicts undermined the integrity of their proceedings. The Fifth Circuit emphasized "[w]here allegations of bias based on the prejudgment of the facts or outcome of a dispute generally stem from the fact that an administrative body or hearing officer has dual roles of investigating and adjudicating disputes and complaints . . . the honesty and integrity of those

7

serving as adjudicators is presumed." *Id.* at 776 (*quoting Baran v. Port of Beaumont Nav. Dist. of Jeff. Cnty.*, 57 F.3d 436, 446 (5th Cir. 1995)).

In this case, the amended process provides substantial procedural protections designed to minimize the risk of an erroneous deprivation. The University process provides, at a minimum, the following procedural safeguards: 1) Doe will receive written notification of the allegations in advance of the hearing; 2) Doe will receive written and oral explanations of the adjudication process; 3) Doe will have access to a University-assigned advisor for procedural questions; 4) Doe may retain and confer with legal counsel throughout the entire process; 5) the University will request the attendance of any witnesses Doe identifies as having relevant information; 6) Doe may submit any and all documentary evidence he deems relevant for the fact-finder's consideration; 7) Doe will receive a list of witnesses identified by the complainant and any documentary evidence submitted by the complainant in advance of the hearing; 8) the University will empanel a three-person committee to investigate and determine whether a violation of University policy occurred; 9) Doe will receive the identification of the panel members in advance of the hearing to screen for any potential conflicts, 10) Doe may attend by videoconference each interview held by the fact-finding panel; 11) Doe may submit any questions for cross-examination that he thinks witnesses should be asked; 12) Doe may state for the record the necessity and importance of any of his questions the fact-finding panel declines to ask; 13) Doe will have access to a recording of all interviews; 14) Doe will be provided a summary of the evidence gathered by the fact-finding committee at the conclusion of the investigation; 15) Doe will have five business days to review that summary and respond with his

own statement and summary of evidence; 16) Doe will be presumed not responsible and found responsible only if the panel determines it is more likely than not that he violated the University's conduct policy; and 17) Doe will have a right to appeal the panel's findings. *See Process Ltr.*, pp. 1-3 [Doc. 40-1].

As in *Plummer*, the University process provides Doe a meaningful opportunity to address the allegations and to challenge the evidence presented against him. He will have ample opportunity to participate in the investigatory process and then to present additional statements and documentary evidence to the fact-finder. Based on the *Matthews* factors, the University's amended process is constitutionally sufficient.

        ***b.   The absence of a specific procedural mechanism such as direct cross-examination does not give rise to a constitutional violation.***

Doe largely ignores the *Matthews* factors, however, and contends the University's process is constitutionally inadequate because it does not provide certain specific procedures, such as full and unfettered cross-examination. But as emphasized by the Fifth Circuit only last year, a "***university is not a court of law, and it is neither practical nor desirable it be one***." *Plummer v. Univ. of Hous.*, 860 F.3d 767, 773 (5th Cir. 2017) (*citing Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 635 n.1 (6th Cir. 2005)) (emphasis added). While due process requires that students in collegiate disciplinary proceedings have an adequate opportunity to respond, "their rights in the academic disciplinary context ***are not co-extensive with the rights of litigants in a civil trial or with those of defendants in a criminal trial***." *Nash v. Auburn Univ.*, 812 F.2d 655, 664 (11th Cir. 1987) (emphasis added); *Jenkins v. La. State Bd. of Educ.*, 506 F.2d 992, 1000

(5th Cir. 1975). Accordingly, the absence of a specific procedural mechanism present in criminal or civil judicial proceedings does not constitute a procedural due process violation where application of the *Matthews* factors does not mandate such a requirement. *See Doe v. Univ. of Miss.*, 2018 U.S. Dist. LEXIS 123181, *22-25, 2018 WL 3570229, 3:16-CV-63-DPJ-FKB (Jul. 24, 2018).

While some courts have held that cross-examination may at times be required in collegiate disciplinary proceedings, the great majority of those courts have rejected the invitation to judicially mandate a right of ***direct*** cross-examination. *See Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 635 n.1 (noting a student's "right to cross-examine witnesses generally has not been considered an essential requirement of due process in school disciplinary proceedings."); *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 401 (6th Cir. 2016) (holding student should be allowed to cross-examine witnesses *through* panel); *Roe v. Adams-Gaston*, 2018 U.S. Dist. LEXIS 185697, *32 (S.D. Ohio Apr. 17, 2018)  ("Recognizing that universities are not courts, the Sixth Circuit has permitted universities some flexibility in the cross-examination procedures they use in disciplinary proceedings."); *Doe v. Univ. of Mich.*, 325 F. Supp.3d 821, 830 (E.D. Mich. 2018) (allowing cross-examination but ordering that it be conducted indirectly through the panel).

Instead, courts by and large have recognized imposing such quasi-judicial requirements in the context of student disciplinary proceedings imposes a significant burden on such institutions and interferes with the institutions' primary educational mission. *See Plummer*, 860 F.3d at 774, n.7 ("Although it is true that the University is interested in providing a fair disciplinary process, the Supreme Court has emphasized that [a] school is an academic

institution, not a courtroom or administrative hearing room.") (internal quotation omitted); *Nash v. Auburn Univ.*, 812 F.2d 655, 661 (11th Cir. 1987) (observing due process clause "merely guards against the risk of unfair suspension 'if that may be done without prohibitive cost or interference with the educational process'") (internal quotation omitted); *Dixon*, 294 F.2d at 159 (observing full-dress hearing with right to cross-examine might be impractical and detrimental to college's educational atmosphere).

Earlier this year, this very Court found although students facing disciplinary procedures arising out of sexual misconduct allegations have significant and important due process rights, those rights do not include a right to ***direct*** cross-examination. In *Doe v. University of Mississippi*, the Court approved an indirect cross-examination procedure almost identical to the University's here. 2018 U.S. Dist. LEXIS 123181, 2018 WL 3570229, 3:16-CV-63-DPJ-FKB (S.D. Miss. Jul. 24, 2018). There, the plaintiff argued a procedural due process denial because the university did not allow him to directly cross-examine witnesses, instead forcing him to proffer questions to the panel for ultimate submission to the witnesses. *Id*. at 20. In determining whether this circumscribed form of cross-examination satisfied due process requirements, the Court found this indirect cross-examination procedure constitutionally sufficient because it provided the student "a meaningful opportunity to pose questions to the witnesses who testified against him." *Id*. at 24.

That holding is consistent with the Fifth Circuit's decision in *Plummer*, where the court ultimately focused on whether the students "received multiple, meaningful opportunities to challenge the University's allegations, evidence, and findings." *Plummer*, 860 F.3d at 774.

Furthermore, in *Dixon*, the court explicitly disclaimed such a constitutional requirement. 294 F.2d at 159. There, the Fifth Circuit held, while a hearing which gives collegiate authorities the opportunity to hear both sides regarding alleged misconduct is necessary, such requirement does not also "imply that a full-dress judicial hearing, with the right to cross-examine witnesses, is required." *Id*. According to the Fifth Circuit, "[s]uch a hearing, with the attending publicity and disturbance of college activities, might be detrimental to the college's education atmosphere and impractical to carry out." *Id*.

Congruently, in *Esfeller v. O'Keefe*, a non-binding but persuasive opinion, the Fifth Circuit held a respondent student was not entitled to the 'opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident" even when defending claims that he had "persistently harassed and threatened his ex-girlfriend through email and social networking sites . . . and physically confronted her." 391 F. App'x 337, 338 (5th Cir. 2010).[15] Because "the panel heard from witnesses designated by [the respondent student][,] considered the documentary evidence that he submitted" and was given multiple other opportunities to be heard, the process was constitutionally sufficient. *Id*. at 343.

The Sixth Circuit, which has been at the vanguard of student procedural due process, has likewise historically held, while there are circumstances under which a student possesses a

---

[15] While this Court previously distinguished *Esfeller* because of its reliance on *Goss v. Lopez*, the Fifth Circuit has continued to rely on *Goss* for procedural due process authority in the context of student disciplinary procedures, even when those proceedings involve claims of sexual assault and potential expulsion. *See Plummer*, 860 F.3d 767, 773-774, n. 7.

constitutional right to cross-examination, the due process clause does not require unfettered, direct cross-examination. In *Doe v. Cummins*, for instance, the Sixth Circuit held that accused students must be afforded at least a "***circumscribed form***" of cross-examination, and approved the university's process of allowing the respondent student to submit questions to the trier of fact, who could then submit the questions to witnesses. 642 F. App'x 437, 446 (6th Cir. 2016) (emphasis added). Notably, the Sixth Circuit approved the process there even though the trier of fact did not ask all questions or allow an opportunity to submit follow-up questions. *Id*. In *Doe v. University of Cincinnati*, the Sixth Circuit emphasized that "what matters" is that the trier of fact has the opportunity to "assess the demeanor of both the accused and his [or her] accuser," and held that the accused student should at least be able to cross-examine witnesses ***through*** the hearing board. 872 F.3d 393, 404 (6th Cir. 2017).

Admittedly, the Sixth Circuit issued mixed signals on the continued viability of circumscribed cross-examination in *Doe v. Baum*, 903 F.3d 575, 575 (6th Cir. 2018), stating on one hand that "the university must give the accused student or his agent an opportunity to cross-examine the accuser and adverse witnesses" while, on the other hand, maintaining its holding was merely a reiteration of its previous holdings in *Flaim v. Medical College of Ohio*, 418 F.3d 629, 641 (6th Cir. 2005), and *Doe v. University of Cincinnati*, 872 F.3d at 401. *Id*. at 578. Again, in *Doe v. University of Cincinnati*, the Sixth Circuit explicitly held that "[a]llowing John Doe to confront and question Jane Doe ***through the panel*** would have undoubtedly aided the truth-seeking process and reduced the likelihood of an erroneous deprivation." 872 F.3d at 404 (emphasis added).

13

Given that tension, Judge Ronald Lee Gilman opined the majority had gone "a bridge too far" in seemingly mandating unfettered direct cross-examination. *Id*. at 589 (concurring in part and dissenting in part) (Gilman, J.). Judge Gilman reiterated the Sixth Circuit had previously approved circumscribed forms of cross-examination and what had previously mattered to the court was whether the trier of fact had the "ability to assess the demeanor of both the accused and his accuser." *Id*. Judge Gilman critiqued the majority's expansion of that right as **unsupported by a single case citation**, and unaccompanied by ***any explanation*** of why the *Matthews* balancing factors would require unfettered cross-examination by a representative. *Id*.

Here, in support of his request for a right of direct cross-examination, Doe claims that cross-examination "allow[s] the accused to identify inconsistencies in the other side's story" and "gives the fact-finder an opportunity to asses a witness' demeanor and determine who can be trusted." Pl.'s Brf. p. 4 [Doc. 41]. He claims that, without being able to personally ask the questions, he must "try and guess what kind of questions should be asked of Roe and witnesses before they are questioned, and submit questions to the SMIT, who may then disregard every question presented." *Id*. at 5. Doe argues he must also guess follow-up questions based on assumed answers, and posits that "the questions will be asked with a substantial gap in time." *Id*. According to Doe, this gap in time "will not allow the fact finders to observe the demeanor and credibility of the person being questioned." *Id*.

To the contrary, the amended process allows Doe (or Doe's legal counsel) to submit questions both during and immediately following a witness interview. Should Doe identify additional follow-up questions while his questions are being asked, nothing in the process

prohibits him from submitting those questions as well. Though the hearing panel will retain

ultimate authority regarding when his slated questions are asked, Doe may probe the witness'

account, recollection, and/or potential motives by submitting questions through the panel.

Moreover, because Doe can observe the proceedings in real-time and submit questions

contemporaneously, he will not have to guess at a witness' expected statements. While Doe

speculates that the panel could refuse to ask any and all of his questions, that concern is fueled

by nothing more than conjecture and runs counter to the Fifth Circuit's instruction that

administrators are presumed to act in good faith.[16]

      In short, the University's process meets Doe's claimed objectives of identifying

inconsistencies and allowing the fact-finder to further assess a witness' credibility. Doe fails to

identify any marginal benefit direct cross-examination would provide over the University's

proposed indirect method.

      On the other hand, allowing direct cross-examination will force upon the University

significant administrative burdens. Doe ignores these burdens and the additional issues that will

ensue, but they will significantly impair the University's ability to timely and effectively resolve

complaints of student misconduct.

      For instance, should Doe be the one to ask his questions, or should Doe's attorney be

allowed or required to ask the questions? Should Roe (or her counsel) be allowed to directly

cross-examine Doe? Should the parties (or their attorneys) be allowed to interpose objections to

---

[16] As further discussed below, it is also unripe for review.

the scope of the other's questions? If so, who will resolve those objections? Should it be the University's fact-finding panel, which is frequently composed of non-lawyers?[17] Or, should the University appoint an attorney as some sort of quasi-administrative law judge to preside over its student disciplinary hearings? With the introduction of legal counsel, should the University develop or apply more rigorous evidentiary standards? Should it entertain motions and arguments from students' legal counsel, or should their participation be limited to cross-examining other students? The Sixth Circuit left these and other questions unanswered in *Baum*, claiming that those questions were not yet before the court, but *Matthews* plainly instructs that the court must consider the burden accompanying additional procedures **before** mandating such a constitutional requirement. *See Baum*, 903 F.3d 575, 583 n.3 ("The concurrence/dissent poses a number of thoughtful questions about what universities need to do going forward. None of these, however, are currently before us.").

While the University could endeavor to create a process that mimics a civil or criminal court proceeding, both the Supreme Court and the Fifth Circuit have consistently held that school disciplinary proceedings need not and indeed should not track the judicial system. *See Plummer*, 860 F.3d at 774 n.7 ("[A] school is an academic institution, not a courtroom or administrative courtroom.") (internal quotation omitted); *Gorman v. Univ. or Rhode Island*, 837 F.2d 7 14 (1st Cir. 1998) ("[I]t is no exaggeration to state that the undue judicialization of an administrative hearing, particularly in the academic environment, may result in an improper allocation of

---

[17] As currently constituted, there is not a lawyer on the panel that will serve in this case. *See* Proces Ltr., p. 2 [Doc. 40-1].

resources, and prove counter-productive."). Instead, the ultimate question is whether the University's process provides notice and an opportunity to be heard.

Here, the University's indirect form of cross-examination preserves the rudiments of the direct adversarial cross-examination typical of the courtroom without requiring the University to convert its student disciplinary hearings into formal trials. Under the University's procedure, Doe will be able to challenge the recollection, credibility, and motives of other witnesses. The University's process passes constitutional muster.

### c. Doe's hypothetical constitutional predicaments are not ripe.

In addition to opposing the structure of the University's process, Doe lobs a few hypotheticals into his challenge, asserting the panel members might refuse to ask any of his questions and that the panel members might have knowledge of the prior proceedings. Neither of these issues, however, are ripe for the Court's review.

The basic rationale behind the ripeness doctrine is to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Roark v. Hardee LP v. City of Austin*, 522 F.3d 533, 544 (5th Cir. 2008) (quoting *Abbot Labs. v. Gardner*, 387 U.S. 136, 148, 87 S. Ct. 1507 (1967)). Accordingly, a ripeness inquiry is often required when a party is seeking pre-enforcement review of a law or administrative process, as Doe is here. *Id*. (quoting *Poe v. Ullman*, 367 U.S. 497, 81 S. Ct. 1752 (1961)). To determine whether a pre-enforcement challenge should be considered, the Court considers both the hardship that would result to Doe if the Court were to deny review prior to enforcement, and whether the factual and legal issues are fit for judicial review. *Id*. Issues are typically considered

unfit for review when a particular problem is merely hypothetical. *United States v. Duckett*, 1995 U.S. App LEXIS 44076, at *11 (5th Cir. June 6, 1995).

Even in a criminal context, a defendant is not constitutionally entitled to ask every question he or so desires on cross-examination; instead trial judges retain wide latitude "to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431 (1986)). Not surprisingly, that rule applies with even greater force in the context of student disciplinary proceedings, where a respondent student is not denied due process merely because the panel does not ask every question he or she submits for indirect cross-examination. *See Cummins*, 642 F. App'x at 446. Moreover, a fact-finder's knowledge of a previous disciplinary proceeding does not necessarily amount to a due process violation. *See Doe v. Univ. of Miss.*, 2018 U.S. Dist. LEXIS at *25 (S.D. Miss. Jul. 24, 2018); *Lee v. Macon Cnty. Bd. of Educ.*, 490 F.2d 458, 461 (5th Cir. 1974) (instructing the district court to "remand the case to the defendant Board for reconsideration under correct legal standards.").

As such, both of Doe's hypothetical constitutional queries require additional fact development before this Court can adjudicate them. Doe's claim the panel might decline to ask all of his submitted questions is based entirely on supposition, but also might not even give rise to a constitutional violation if all of Doe's submitted questions were irrelevant. This Court cannot evaluate Doe's challenge without knowing at least: a) whether the panel did decline to ask any of Doe's questions, b) what the questions were, and c) on what grounds the panel

declined to ask such questions. Doe's claim regarding the prior knowledge of panel members is similarly conjectural, as Doe does not allege that any of the panel members do have knowledge of the prior proceedings, only that he has not received adequate assurances that they do not.

This Court cannot evaluate Doe's challenge without knowing at least: a) whether any of the panel members have knowledge of the prior proceeding, b) what that knowledge entails, and c) whether such knowledge is sufficient to deprive Doe of a fair hearing. Because Doe's constitutional quagmires are entirely hypothetical at this point, they are not ripe for review. Alternatively, the Court should find that the issues presented by Doe do not on their face violate his procedural due process rights.

### 2. Doe cannot clearly show an injunction is in the public interest.

Doe must show that an injunction is in the public interest before the Court can grant his request. *Moore v. Brown*, 868 F.3d 398, 403 (5th Cir.  2017) ("In order to obtain a preliminary injunction, a movant must demonstrate . . . that the grant of the injunction is in the public interest."). In the context of student conduct proceedings, the courts have recognized compelling public interests on both sides of the equation. *Doe v. George Washington Univ.*, 305 F. Supp. 3d 126, 131 (D.D.C. 2018). In *Doe v. George Washington University*, the court acknowledged the public interest in the fair treatment of students in university disciplinary processes, but also recognized the important public interest in universities "being able to independently investigate and, when appropriate, discipline, [their] students for misconduct." *Id*. Accordingly, the court held neither interest outweighed the other, and the public interest factor failed to support entry of a preliminary injunction. *Id*.

19

Here, the University has the same interest in investigating and disciplining its students for misconduct if found responsible. That interest is necessarily enhanced where, as here, the allegations of misconduct relate not only to the accused student, but another student who complained that Doe's conduct adversely affected her enrollment at the University. Doe cannot show the public interest clearly weighs in favor of granting his requested preliminary injunction.

3.      *Doe cannot clearly show the balance of equities tilts in his favor.*

Courts have recognized an injunction barring a university from investigating allegations of student misconduct "would cast doubt on [the university's] power to regulate its student body, including investigating and disciplining its students for sexual misconduct," and such an injunction could therefore "cause harm to others." *Doe v. Ohio St. Univ.*, 136 F. Supp. 3d 854, 871 (S.D. Ohio 2016). Moreover, "[a] college's or university's interest in maintaining a hostile-free learning environment, particularly as it relates to its Title IX funding, is well recognized." *See Bonnell v. Lorenzo*, 241 F.3d 800, 822 (6th Cir. 2001).

Here, the University has a strong interest in effectively and efficiently investigating allegations of sexual misconduct between two students. The University additionally has an interest in developing a hearing process that will safeguard the procedural due process rights of its students without imposing an undue burden on the University's educational mission. Doe cannot clearly show that the balance of equities tilts in his favor.

4.      *Doe cannot clearly show he is likely to suffer irreparable harm absent preliminary relief.*

The deprivation of a constitutional right may constitute irreparable harm, but the

"argument that he is entitled a presumption of irreparable harm based on the alleged constitutional violation is without merit" if the court finds it unlikely the plaintiff will succeed on the merits of a constitutional claim. *Overstreet v. Lexington-Fayette Urban Cty.*, 305 F.3d 566, 578 (6th Cir. 2002). As previously discussed, Doe will receive adequate procedural due process, and his remaining claims of irreparable harm are insufficient.

Doe claims his inability to directly cross-examine witnesses will result in irreparable harm because "[h]is reputation will be irreparably broken and for all reasonable purposes he will have to disclose to prospective employers and other schools the unconstitutional grounds if the SMIT panel again fails to provide him due process." Pl.'s Brf. p. 5 [Doc. 41]. Doe's assumption he will be found responsible, however, is completely conjectural at this point. Accordingly, Doe has not shown he will suffer irreparable harm if he is required to submit his cross-examination questions through the panel rather than directly.

CONCLUSION

Though the Supreme Court and the Fifth Circuit have consistently held student disciplinary proceedings are not tantamount to criminal or civil judicial proceedings, Doe asks the Court to universally mandate direct cross-examination whenever an alleged school policy violation involves sexual misconduct. Doe overlooks the safeguards designed to ensure he is not erroneously found responsible for a student conduct violation, insisting the University must still take another step toward converting its classrooms to a courtroom. The University is an educational institution and not a court of law, however, and educating students remains its foremost objective. Because the University's process effectively safeguards Doe's procedural

due process rights by providing the rudiments of cross-examination and Doe has failed to

identify any additional benefit direct and unfettered cross-examination would provide, the Court

should deny his request for an injunction.

THIS, the 8th day of November, 2018.

Respectfully submitted,

**THE UNIVERSITY OF SOUTHERN MISSISSIPPI; STATE INSTITUTIONS OF HIGHER LEARNING; STATE OF MISSISSIPPI; RODNEY D. BENNETT, IN HIS OFFICIAL CAPACITY; REBECCA MALLEY, IN HER OFFICIAL CAPACITY**

 _/s/ J. Andrew Mauldin_____
J. CAL MAYO, JR. (MB NO. 8492)
J. ANDREW MAULDIN (MB NO. 104227)
ATTORNEYS FOR DEFENDANTS

OF COUNSEL:
MAYO MALLETTE PLLC
5 University Office Park
2094 Old Taylor Road
Post Office Box 1456
Oxford, Mississippi 38655
Tel: (662) 236-0055
cmayo@mayomallette.com
dmauldin@mayomallette.com

**CERTIFICATE OF SERVICE**

I, J. Andrew Mauldin, one of the attorneys for the Defendants, do certify that I have electronically filed this document in the ECF system with the Clerk of the Court which sent notification of the filing to all attorneys of record.

THIS, the 8th day of November, 2018.

 */s/ J. Andrew Mauldin*
J. ANDREW MAULDIN