**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**JOHN DOE** **PLAINTIFF**

**V.** **CIVIL ACTION NO. 2:18-CV-153-KS-MTP**

**THE UNIVERSITY OF SOUTHERN MISSISSIPPI, *et al.*** **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This cause is before the Court on the Plaintiff John Doe's Motion for Second Temporary Restraining Order and Injunctive Relief filed on October 25, 2018 [40]. The Court held a brief telephone conference on October 26, 2018 to discuss the Defendants' proposed revised hearing procedures, and that same day, this Court entered an Order [42], denying the motion insofar as it sought a temporary restraining order and reserving ruling on the injunction until briefing was completed. On November 8, 2018, Defendants responded to the motion [43, 44]. Plaintiff thereafter filed a Supplement to Second Motion for Temporary Restraining Order and Injunctive Relief [47], and Defendants then responded to the Supplement [48]. Having reviewed the parties' submissions, the relevant law, as well as the Department of Education's proposed regulations, and otherwise being fully advised in the premises, the Court finds that the motion for preliminary injunction will be **denied**.

## I. BRIEF BACKGROUND[1]

The salient facts for purposes of this motion are that on June 25, 2018, the Title IX Coordinator for the University of Southern Mississippi ("the University"), Dr. Rebecca Malley, advised Plaintiff that a complaint had been filed against him and sent him a copy of the

[1] Facts of the underlying sexual misconduct complaint and proceedings are set forth in the Court's prior Order [29].

University's Sexual Misconduct Policy and Procedures. Eventually, a "formal investigative hearing" was held on July 18 and 20, 2018, which consisted of interviews by the SMIT either in person or by phone of Jane Doe, Plaintiff, and six witnesses. The only people present in the room were the three SMIT panel members and a graduate assistant who took notes. Plaintiff was not allowed to be present during any of the interviews, nor was he allowed to submit any questions to be asked of any of the witnesses, as the procedures for the hearing did not allow the parties to do so. A week after the hearing, Dr. Malley sent Plaintiff a summary of the interviews and asked for any changes/corrections/additions. Plaintiff did not respond. The SMIT conducted the interviews, evaluated the evidence, deliberated, and then rendered its decision.

On August 10, 2018, the University of Southern Mississippi's Title IX Office advised Plaintiff that the Sexual Misconduct Investigative Team (SMIT) had determined that Plaintiff violated the University's Sexual Misconduct Policy and that disciplinary sanctions would be issued. In a letter dated August 21, 2018, the Vice President of Student Affairs notified Plaintiff that the sanction would be a one-year suspension.

Plaintiff filed this action on August 23, 2018, and a preliminary injunction hearing was held on September 10, 2018. On September 14, 2018, this Court partially granted the Plaintiff's injunctive relief, finding that Plaintiff had carried his burden and ordering that the Plaintiff be reinstated as a student in good standing at the University during the pendency of this matter and be allowed to attend classes and participate in all necessary activities to maintain his scholarship [29].

**II. CURRENT CONTROVERSY**

The University has elected to move forward with a re-hearing in the Sexual Misconduct Policy violation complaint against John Doe. The University has proposed a revised procedure in

an effort to comply with this Court's prior Order and constitutional procedural due process [40-1].[2] The proposed new procedures are as follows:

> (1) Plaintiff and Jane Roe will each have access to separate process advisors;
>
> (2) Three panelists will review the complaint and conduct the investigative hearing. None of the panelists were involved with the first hearing. These three panelists will determine whether a violation of the University's Sexual Misconduct Policy occurred;
>
> (3) At the hearing, each party will be given the opportunity to listen to the panel's questioning of the complainant/respondent and of the witnesses, and each will have the chance to pose questions to the complainant/respondent and to the witnesses if he/she so chooses. Questions will be submitted to the panelists, and the panelists will determine what questions are appropriate to ask of the person they are interviewing. Should the panel decline to ask a question submitted, they will inform the party that the question will not be asked and allow that party to provide an explanation as to why the question is necessary. After hearing the explanation, the panel will decide whether to reverse or maintain its decision.
>
> (4) Each party will be given access to a private meeting room from which he/she can listen to the proceedings.[3] If he/she has a legal advisor or other support person, they will be allowed to observe the proceedings with the party from the private meeting room as well. The parties will be given an email address to send your questions as the complainant/respondent/witnesses is being questioned, although the panel will retain the right to determine when the questions are asked.
>
> (5) There will be a digital recording of all the proceedings, access to which will be made available to the parties for review upon request, although no copies will be made.
>
> (6) The panel will provide each party with a written summary of evidence after all interviews have been held and give both an opportunity to review and respond to that summary. The panel will then deliberate and make its decision based on a preponderance of the evidence (more likely than not) standard.

---

[2] In the Court's telephone conference with the parties on October 26, 2018, Plaintiff advised that the only remaining issue to be resolved was that of the procedure for cross-examination since the parties could not be present in the room where the questioning was occurring.

[3] The Court is uncertain whether there will be a video feed or just an audio feed because the paper submissions indicate an audio feed will be provided [40-1], [43-1], but there was discussion of a video feed during the telephone conference with the parties and the Defendants' response indicates a video feed will be provided [44 p. 4]. Regardless, either means will allow the parties to hear the testimony first hand and ask follow-up questions in a form of cross examination to point out possible untruths and inconsistencies at the time of the testimony, instead of waiting for a written summary of the testimony. As for the necessity of being able to view the witness either live or via video feed, bear in mind, it is the factfinder for whom it is essential to view the witnesses to assess credibility. *See Doe v. Cincinnati*, 872 F.3d at 404.

> (7) The panel will provide a written report of its findings and conclusions. The respondent will be considered not responsible unless the information supporting a finding of responsibility outweighs information supporting a finding of no responsibility. If the respondent is found responsible, the sanction could include a reprimand, suspension, expulsion, or other sanctions as provided under *Procedures for the Resolution of Allegations of Sexual Misconduct*.
>
> (8) Both parties have a right to appeal the decision of the panel and/or the sanctions imposed, as provided in *Procedures for the Resolution of Allegations of Sexual Misconduct.*
>
> (9) The parties can send in documents or other evidence for the panel's consideration, as well as witnesses' names and telephone numbers in advance. Each party will receive a list of the other party's witnesses and a copy of all documents and evidence submitted by the other. The University will contact the witnesses to arrange participation. The parties may contact witnesses but are advised not to do anything (directly or indirectly) that might be interpreted as intimidating a witness or otherwise trying to discourage participation in the process.

In light of the re-hearing on the matter under newly proposed procedures, Plaintiff asked this Court to enter a preliminary injunction, "enjoining the Defendants from violating John Doe's constitutional rights and rights established under Title IX, enjoining them from continuing the discriminatory and unlawful disciplinary action until the Defendants put procedures in place to safeguard Doe's due process rights." [40] at 3. In addition, in his Supplement, due to proposed revised regulations being issued by the Department of Education, Plaintiff asks the Court to enjoin the Defendants from proceeding with the hearing until the newly proposed regulations are finalized or until the University allows Doe a right to cross-examine his accuser and witnesses through his selected adviser. The Court finds that an injunction is not warranted.

## III. DISCUSSION

### A. Standard for Preliminary Injunction.

It has long been the law that to be entitled to injunctive relief, a party must show "(1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that

irreparable injury will result if the injunction is not granted, (3) the threatened injury if the injunction is denied outweighs any harm that will result if injunction is granted, and (4) the granting of the injunction will not disserve the public interest. *PCI Transp., Inc. v. Fort Worth, W.R.R. Co.*, 418 F. 3d 535, 545 (5th Cir. 2001) (citation and quotations omitted). A preliminary injunction is an extraordinary remedy and should not be granted unless the party prevails on all four elements. *Planned Parenthood Ass'n of Hidalgo Cty. Tex,, Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012).

**B. Analysis of the Factors.**

**1. A substantial likelihood of success on the merits.**

The first step in establishing the necessity for a preliminary injunction is a showing that there is a likelihood of success on the merits. Upon consideration of the revised procedures proposed by the University, the Court finds that this initial element is not met.

**a. Current status of the law**

The Fifth Circuit has never specifically held that any sort of cross-examination is required. In its previous Order, this Court was persuaded by the recent rulings of the Sixth Circuit[4] as well as the dissent in *Plummer v. University of Houston*, 860 F.3d 767 (5th Cir. 2017), in finding that some sort of cross-examination is required in a case such as this—a sexual misconduct case where credibility is at issue.[5] This Court still finds that in such a case, cross examination is crucial. However, the question remains, "under the circumstances of the case, how much procedure is due?" The United States Supreme Court previously admonished:

[4] *See Doe v. Cummins*, 662 Fed. Appx. 437, 446 (6th Cir. 2016)(unpublished)); *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399-402 (6th Cir. 2017); *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018).

[5] The prior procedure provided no opportunity to hear the testimony live or submit any follow up questions at the

> The judicial model of an evidentiary hearing is neither a required, nor even the most effective, method of decisionmaking in all circumstances. The essence of due process is the requirement that "a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it." All that is necessary is that the procedures be tailored, in light of the decision to be made, to "the capacities and circumstances of those who are to be heard," to insure that they are given a meaningful opportunity to present their case.

*Mathews v. Eldridge*, 424 U.S. 319, 348-349 (1976) (internal citations omitted).

Plaintiff complains that the new procedures do not go far enough because neither Plaintiff nor Jane Roe may be in the same room while the other, and the witnesses, are questioned. Plaintiff complains that the panel has the discretion to decide which submitted questions will be asked and there will be some length of time between the testimony and any follow-up questions. In other words, Plaintiff argues that direct (by the party's representative), real-time, unfettered cross-examination is required in order to satisfy due process. The Court is not persuaded that is what due process requires. The Court is cognizant of the fact that there has been no case law to date that specifically holds that direct, unfettered cross examination is required for adequate due process in a university disciplinary procedure, even one involving sexual misconduct where credibility lies at the heart of the determination.[6]

While some have urged that the Sixth Circuit's ruling in *Doe v. Baum* stands for such a proposition, the Court declines to follow *Baum* in that regard for a number of reasons. First, the Fifth Circuit, even in dissent, has never suggested that full blown, direct cross examination is required to satisfy due process. Second, the Court is mindful of the admonition of the Fifth Circuit majority in *Plummer* that "[a] university is not a court of law, and it is neither practical

---

time the witnesses testified.

[6] In *Doe v. University of Mississippi*, this Court found no due process violation when questions were submitted to a panel and not all of the questions were asked. No. 3:16-cv-63-DPJ-FKB, 2018 WL 3570229 *9 (S. D. Miss. July 24, 2018).

nor desirable it be one." *Plummer v. Univ. of Houston*, 860 F.3d 767, 773 (5th Cir. 2017).[7] Third, and most significantly, this Court opines that the majority in *Baum* went too far.

In *Baum*, the court was reviewing the grant of a Motion to Dismiss. In the lower court, the plaintiff complained that he was provided no means of cross examination and alleged that by not allowing cross examination when credibility was at issue, the college had violated his procedural due process rights. The lower court found that the plaintiff failed to state a claim for a procedural due process violation. The Sixth Circuit reversed, but its ruling appears to go well beyond what was required for reversal.

The Sixth Circuit had previously suggested that cross-examination may be required in school disciplinary proceedings when credibility was at issue. *See Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 641 (6th Cir. 2005). Later, the court specifically held that when credibility is at issue, due process requires a university to provide the accused a hearing with an opportunity to conduct cross-examination. *See Doe v. Univ. of Cincinnati*, 872 F.3d 393, 401-401 (6th Cir. 2017). Prior to *Doe v. Cincinnatti*, the court had already held that a circumscribed form of cross examination satisfied procedural due process. *See Cummins*, 662 Fed. Appx. at 448.[8] Based on these prior rulings, when the plaintiff claimed that by failing to provide any form of cross examination, the university had violated his due process, the Sixth Circuit could have simply held that such an allegation does state a claim and reverse.

---

7 The Court is also mindful of the Supreme Court's admonition that "[j]udicial interposition in the operation of the public school system of the Nation raises problems requiring care and restraint." *Goss v. Lopez*, 419 U.S. 565, 578 (1975).

8 In *Cummins*, the plaintiffs, in responding to sexual misconduct allegations, argued they were effectively denied cross-examination because they were allowed to submit only written questions to the panel, the panel did not ask all questions submitted, and they were not allowed to submit follow-up questions. 662 Fed. Appx. at 448. The appellate court noted that due process requires a limited ability to cross examine witnesses when credibility is an issue and that the requirement was indeed met in that case. *See id.*

The issue before the court in *Baum* was not like that in *Doe v. Cummins*, where some form of cross-examination was allowed and the plaintiff argued it was not sufficient. Such a scenario in *Baum* certainly would have lent itself to the court's declaration about exactly what form of cross-examination may be required, but the court was simply not called upon to make such a determination at this procedural juncture. Consequently, this Court considers all such discussion mere dicta—unessential to the holding of the case.

Again, the Sixth Circuit in *Cummins* found the school's circumscribed process for cross examination adequate under due process; here, the University's proposed procedure goes well beyond that. In *Cummins*, questions were submitted through the panel, not all questions were asked, and there were no follow-up questions. Here, the University proposes providing a live feed for the testimony with real-time follow-up. Granted there may be a minimal lag between the answer and the panel's presenting any follow up questions, but the opportunity is there. It is simply premature for Plaintiff to complain that all questions may not be asked because the panel has discretion to decide which questions to ask. All follow-up questions *could* very well be asked or perhaps the mere raising the issue will call the panel's attention to the inconsistencies in the witness's testimony. Regardless, according to the Sixth's Circuit's persuasive holding, not asking all of the questions submitted still comports with due process.

In sum, the Court finds that the University's proposed revised procedures would be sufficient to survive a due process challenge as the procedures appear to adequately provide Plaintiff notice and an opportunity to be heard. *See Dixon v. Ala. State Bd. of Educ*., 294 F.2d 150, 158 (5th Cir. 1961). Because Plaintiff fails to carry his burden as to the first step necessary to establish entitlement to a preliminary injunction, analysis of the three remaining factors is moot.

**b. Department of Education's proposed regulations**

Finally, the Court will briefly address the proposed regulations issued by the Department of Education on November 16, 2018. In his Supplement, Plaintiff urges the Court to enjoin the University from holding any re-hearing until the new regulations are in place. The Court declines to do so for two reasons. First, there is no guarantee, or even probability, that the proposed regulations will be adopted wholesale as proposed. A simple google search of the proposed regulations, which were released on November 16, 2018, already indicates a hailstorm of opinions as to the pros and cons of what has been proposed. There is a sixth-month comment period, followed by a period of deciphering and considering submitted comments, and then a determination of what will be adopted as the new regulations. Such delay is not warranted. The Court has determined that \the University's proposed revised hearing procedure appears to adequately satisfy due process.

Second, even if the proposed regulations are adopted in toto, it is not the federal agency's role to determine what constitutes adequate due process—such a determination remains the role of the courts. *See Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Svc*., 58 F. Supp. 3d 1191, 1233 (noting that "[c]ourts afford agencies no deference in interpreting the Constitution" and citing *U.S. West, Inc. v. FCC,* 182 F.3d 1224, 1231 (10th Cir.1999)).

**IV. CONCLUSION**

Plaintiff failed to carry his burden of showing entitlement to a preliminary injunction. Therefore, it is ORDERED that the Second Motion for Preliminary Injunction is denied.

SO ORDERED AND ADJUDGED this 27th day of November, 2018.

/s/ Keith Starrett ___________________
KEITH STARRETT
UNITED STATES DISTRICT JUDGE